## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSHUA DEPREZ | Crim. No. 2:25-cr-00075-JAW |

### GOVERNMENT'S TRIAL BRIEF

On May 8, 2025, the Defendant, Joshua Deprez, was indicted on one charge: Influencing, Impeding, or Retaliating Against a Federal Official By Threatening or Injuring, by threatening to assault or murder a United States official, with intent to intimidate her while she was engaged in the performance of her official duties, in violation of Title 18, United States Code, Section 115(a)(1)(B).

### I.    STATUS OF THE CASE

A.    Jury selection is scheduled for October 6, 2025.

B.    Trial is scheduled to begin October 20, 2025. Two trial days have been reserved.

C.    The government expects to call six witnesses at trial and anticipates that its evidence will take approximately one day to present.

D.    The government's opening statement is expected to last approximately 10 minutes.

### II.    STATUTE AND ELEMENTS

Deprez has been charged with Influencing, Impeding, or Retaliating Against a Federal Official By Threatening or Injuring, in violation of 18 U.S.C. § 115(a)(1)(B). To find him guilty of this charge, the government must prove the following elements beyond a reasonable doubt:

(1) Deprez threatened to assault, or murder, a United States official;[1] and

(2) He did so with the intent to intimidate her, while she was engaged in the performance of her official duties.[2]

18 U.S.C. § 115(a)(1)(B); *see also* Manual of Model Criminal Jury Instructions for the Ninth Circuit Court of Appeals § 8.15 (2022 ed.); Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina § 115(a)(1)(B) (2024 Online Edition).

The government may prove the requisite intent in the charged offense if Mr. Deprez wanted his actions to be received as a true threat; knew that his actions would be viewed as a true threat; or consciously disregarded a substantial risk that his actions would be viewed as a true threat, meaning that he was aware that others could regard his communication as threatening violence but said it anyway. *See Counterman*, 600 U.S. at 69, 78–79; *Black*, 538 U.S. at 359–60; First Circuit Pattern Instructions § 4.18.875; South Carolina Pattern Instructions § 875(c). The government is not required to prove that the person who made the threat intended to or was able to carry out the threat. *United States v. Stefanik*, 674 F.3d 71, 75–76 (1st Cir. 2012); *United States v. Armel*, 585 F.3d 182, 185 (4th Cir. 2009)

---

[1] "Congress used 'official' in § 115 as a general term to incorporate by reference all the 'officers,' 'employees,' 'members,' and 'agents' of the federal departments and agencies listed in § 1114." *United States v. Wynn*, 827 F.3d 778, 784 (8th Cir. 2016). As an employee of an administrative agency, a customer service representative would qualify. *United States v. Bankoff*, 613 F.3d 358 (3d Cir. 2010) (SSA claims representative qualified as "official" per § 115).

[2] Being engaged in "performance of official duties" means that the actions in question related to the victim's performance of her job as a federal employee. *See United States v. Ornelas, 906 F.3d 1138, 1149 (9th Cir. 2018); United States v. Stubler,* 271 Fed. Appx. 169, 170, 2008 WL 821071, 1 (3d Cir. 2008).

A true threat is a statement "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. 343, 359 (2003). It is a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstances that would place a reasonable person in fear of being injured him or herself, or of another person being injured. Eleventh Circuit Pattern Jury Instructions, Criminal Cases § O30.3 (3/10/22 ed.). "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Black*, 538 U.S. at 360.

The government notes that the punishment under this section differs depending on the nature of the threat. A threat made in violation of this section shall be punished by a fine or imprisonment for a term of note more than 10 years, or both, except that imprisonment for a threatened assault shall not exceed 6 years. 18 U.S.C. § 115(b)(4). While the government submits that the alleged threat below can best be understood as a threat to murder, it would be prudent to present the question as to the nature of the threat to the jury for purposes of clarifying the applicable maximum statutory penalty. The government suggests this can be accomplished with a separate question on the jury verdict form.

## III.    ANTICIPATED EVIDENCE

On November 7, 2024, at approximately 2:45pm, Joshua Deprez entered the Social Security Field Office located on 400 Congress Street in Portland, ME. Protective Security Officer (PSO) Kyle Hayes greeted Deprez, who responded by asking what would happen if he farted and put a lighter behind his ass and it

exploded. PSO Hayes asked Deprez not to joke around, who responded that he was kidding. Deprez was seen by Social Security Administration (SSA) Customer Service Representative (CSR) Lori Chase, stationed at Desk 4.

During his conversation with CSR Chase, Deprez requested a new Social Security card. He did not have a valid photo identification available, and became agitated when CSR Chase informed him that this would be necessary in order for her to issue a Social Security card. He raised his voice, asking her to hear him out and demanding to receive a Social Security card. When CSR Chase repeated that Deprez would need a valid form of identification, he became upset and told her "I'll come back with explosives and blow your fucking head off." CSR Chase then told Deprez to get out of the facility.

PSO Hayes and PSO Christopher Francisco responded by going to Desk 4, and told Deprez to leave. Deprez was initially reticent to comply until being told that federal police would be called if he did not, at which point he claimed he did not threaten CSR Chase. As CSO Hayes escorted Deprez toward the elevator, Deprez asked for the officer's full name. CSO Hayes provided only his last name, and Deprez replied "Give me two weeks and I'll figure it out, you don't know who you are standing in front of." Deprez left the office space at about 2:50pm.

In response to this incident, the SSA sent a notice via certified mail on November 12, 2024, restricting Deprez from entering any SSA office nationwide.

## IV.        STIPULATIONS

While the parties do not have any stipulations at this time, counsel will inform the court should any be reached prior to the start of trial.

V.      **ANTICIPATED EVIDENTIARY ISSUES**

1.  <u>Public Records</u>

The government hereby provides notice that it intends to rely on Federal Rules of Evidence 902(1), (2), and/or (4) and 803(6), by offering domestic public records of regularly conducted activity, accompanied by written declarations or testimony of its custodian or other qualified person, certifying that each record: "(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice." Fed. Rule Evid. 803(6), 902(11). Under Federal Rule of Evidence 902(4)(A), a public record is self-authenticating when the copy is certified as correct by a custodian or another person authorized to make the certification. *United States v. Sullivan*, 919 F.2d 1403, 1430 n.43 (10th Cir. 1990), *cert. denied*, 506 U.S. 900 (1992); *Burkhalter v. AllState Indemnity Co.*, 2012 WL 6697230 at *1 (E.D. La. Dec. 21, 2012); *see also F.D.I.C. v. Houde*, 90 F.3d 600, 606 (1st Cir. 1996) ("public records are admissible as an exception to the hearsay rule and generally self-authenticating"). Such a certification dispenses with the need for foundational testimony from a record custodian to authenticate certified copies of public records under certain conditions. *United States v. Doyle*, 130 F.3d 523, 546 (2d Cir. 1997); *United States v. Bauzo-Santiago*, 89 F. Supp.3d 253, 265 n.19 (D.P.R. 2015). "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because -- having been created for the administration of an entity's affairs and not for the purpose of

establishing or proving some fact at trial -- they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 322-23 (2009).

Pursuant to these rules, the government is providing notice of its intent to offer the records from the Social Security Administration, and it offers to make available for inspection in advance of trial the records and declarations of the following public or business records: a notice prohibiting Deprez from entering any Social Security office for a period of one year; as well as three closed circuit surveillance videos (without sound) documenting Deprez's November 7, 2024 visit to the Social Security field office at 400 Congress in Portland, Maine. To this end, the government anticipates calling Operations Supervisor Michael Michaelis, who is familiar with the video surveillance system utilized by the SSA field office at 400 Congress Street in Portland, Maine, and District Manager Jennifer Bowie, who is familiar with the notice sent to Deprez. *See* Fed. Rule Evid. 901(b)(1).

Under the business records exception to the rule against hearsay, records kept in the course of regularly conducted business activity are admissible unless the circumstances indicate lack of trustworthiness. Fed Rule Evid. 803(6). The foundational requirements for Rule 803(6) are: (1) [that] the declarant in the records had knowledge to make accurate statements; (2) that the declarant recorded statements contemporaneously with the actions which were the subject of the reports; (3) that the declarant made the records in the regular course of the business activity; and (4) that such records were regularly kept by the business. *United States v. Moore*, 923 F.2d 210, 914 (1ˢᵗ Cir. 1991); *United States v. Reilly*, 33 F.3d 1396, 1413 (3ʳᵈ Cir. 1994). It is unnecessary for the record's author or

6

custodian to provide the foundational evidence for the admission of a business record. Fed. R. Evid. 803(6). A qualified witness need only be a person who can explain how a record was kept, not necessarily be the person who actually prepared the record. *United States v. McGill*, 953 F.2d 10, 14-15 (1st Cir. 1992).

    2.  <u>Testimony of Agency Witnesses</u>

Federal Rule of Evidence 701 provides that "if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Rule 702 provides that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The government intends to call SSA District Manager Bowie, SSA Operations Supervisor Michaelis, and SSA CSR Chase as witnesses to testify concerning agency records and the facts in this case, as well as any agency regulations, rules, or procedures relevant to these facts. The government submits that, despite the knowledge of agency regulations, rules, and procedures, these witnesses have developed in their time working for the SSA, their testimony will fall within the ambit of lay witness testimony pursuant to Federal Rule of

Evidence 701, rather than expert witness testimony, as described by Rule 702. As this Court has observed,

> It is not always easy to draw a clear distinction between lay and expert testimony. *United States v. Ayala–Pizarro*, 407 F.3d 25, 28 (1st Cir.2005); *Falconer [v. Penn Mar, Inc.]*, 421 F.Supp.2d [190,] 208 [(D. Me. 2006)]. By way of illustration, however, the advisory committee has offered a pertinent example:
>
> > [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert.... Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the *particularized knowledge that the witness has by virtue of his or her position in the business*. The amendment does not purport to change this analysis.
>
> FED.R.EVID. 701 advisory committee notes (emphasis added). The First Circuit recently noted that Rule 701 is "meant to admit testimony based on the lay expertise a witness personally acquires through experience, often on the job." *United States v. Maher*, 454 F.3d 13, 24 (1st Cir.2006); *see also Texas A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir.2003) ("Indeed, an officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert."); *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir.2003) (affirming a decision of the district court to allow officers and employees of plaintiff corporation to give lay opinion testimony of the reasonableness of charges and time to complete repairs, due to their particularized knowledge garnered from years of experience within the field).

*Downeast Ventures, Ltd. v. Washington Cnty.*, 450 F. Supp. 2d 106, 109–10 (D. Me. 2006).

Here, the testimony of these witnesses will be primarily factual in nature, and any testimony as to agency procedures will simply describe ordinary work processes involving meeting with members of the public, the requirements to issue a new Socia Security card, video recording systems utilized by the office,

and procedures concerning responses to disturbances in an office. These are well within the ambit of experience cultivated from years of working for the agency. *See Maher*, 454 F.3d at 24; *Texas A & M Research Found.*, 338 F.3d at 403; *Tampa Bay Shipbuilding & Repair Co.*, 320 F.3d at 1223. This testimony will be offered alongside testimony as fact witnesses concerning the events of November 7, 2024, and any agency response to these events. In aggregate, this makes these employees more appropriately designated as lay witnesses under Rule 701 than expert witnesses under Rule 702.

3.  Prior Consistent Statements – Rule 801(d)(1)(B)

Rule 801(d)(1)(B) permits the admission of a prior statement by a witness when (1) the declarant testifies at trial and is subject to cross-examination; (2) the prior statement is consistent with the declarant's trial testimony; and (3) the prior statement is offered "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying or…to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. Rule Evid. 801(d)(1)(B) (emphasis added). *See also United States v. Jahagirdar*, 466 F.3d 149, 155 (1st Cir. 2006). Consistent with the plain language of this rule, the Government may offer prior consistent statements to rebut any charge of recent fabrication against its witnesses or, alternatively, if the prior consistent statement meaningfully rehabilitates credibility for an attack made on another ground. For such a statement to be offered to rebut a charge of recent fabrication, the "prior statement" must have been made "before the charged recent fabrication or improper influence or motive." *Tome v. United States*, 513 U.S. 150, 167 (1995).

9

### 4. Defendant's Statements

The government anticipates offering evidence of statements made by the defendant to CSR Chase and CSO Hayes, as described above. "When the out-of-court statement at issue was made by the defendant, it is typically classified as an admission and not hearsay, and ordinarily may be admitted against him." *United States v. Vega Molina*, 407 F.3d 511, 519 (1st Cir. 2005); Fed. Rule Evid. 801(d)(2).

### 5. Impeachment by Prior Conviction

If the defendant chooses to testify, the government may attempt to impeach his character for truthfulness as a witness with evidence of a prior conviction. Fed. Rule Evid. 609. For any crime (regardless of punishment), the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement. Fed. Rule. Evid. 609(a)(2); *see United States v. Mahone*, 328 F. Supp. 2d 77, 82 (D. Me. 2004), aff'd, 453 F.3d 68 (1st Cir. 2006).

Here, the government may seek to impeach the defendant with his conviction for failure to give a correct name, in violation of Title 29-A M.R.S.A § 105(4). A person violates this statute if they intentionally fail or refuse upon request to give their correct name, address, or date of birth to a law enforcement officer who has probable cause to believe the person violated Title 29-A. *See id*. The government similarly may seek to impeach the defendant with a conviction for giving a false name, address, or birthdate to a law enforcement officer, in violation of Georgia Code § 16-10-25. A person is guilty of this offense if he gives a false name, address, or date of birth to a law enforcement officer in the lawful

discharge of his official duties with the intent of misleading the officer as to his identity or birthdate. *Id.* The government submits that conviction for these offense necessarily entails a dishonest act or false statement, and therefore must be admitted for purposes of impeachment.

## VI.    CONCLUSION

This brief has addressed some of the issues that might arise at trial. The government requests leave of Court to file other additional memoranda of law that may be necessary or appropriate as the October 20, 2025 trial approaches.

Dated at Portland, Maine on September 30, 2025.

CRAIG M. WOLFF
ACTING UNITED STATES ATTORNEY

*/s/ Jeanne D. Semivan*
Special Assistant U.S. Attorney
U.S. Attorney's Office
100 Middle Street, East Tower
Portland, ME  04101
(207) 780-3257
jeanne.semivan@usdoj.gov

**CERTIFICATE OF SERVICE**

   I hereby certify that on September 30, 2025, I electronically filed the above **Government's Trial Brief** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Amy Fairfield, Esq.
Amy@fairfieldandassociates.com

              */s/ Jeanne D. Semivan*
              Special Assistant U.S. Attorney